UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>v. )<br> ) Criminal No. 04-10336-NMG<br>JOSE RODRIGUEZ )<br>      Defendant ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Jose Rodriguez ("Rodriguez").[1]

### INTRODUCTION

*Rodriguez is a serial heroin dealer. On April 18, 2003, Lowell Police searched Rodriguez's residence at 261 Aiken Avenue in Lowell and found 77 heat-sealed bags with a "moonwalk" label containing heroin, $5,817 in cash, and a digital scale. On June 6, 2004, after confirming the order of 60 grams of heroin from Santiago over the telephone and subsequently meeting with him, Rodriguez was stopped by Lowell Police and found to be in possession of 10 grams of heroin. A search of his apartment uncovered an additional 50 grams of heroin. At the conclusion of the investigation on October 15, 2004, police executed an arrest warrant at Rodriguez's Lowell residence. Once again Rodriguez had plastic bags with a "moonwalk" label containing heroin in his possession. During the wiretap phase of the investigation, Rodriguez was intercepted over the telephone and pager ordering between 50 and 100 grams of heroin from Santiago. He is a career criminal with an extensive record of convictions.*

To determine a defendant's final sentence, this Court must follow the three-step

---

[1] As this Court is aware, following a ten-day trial in October 2006, a jury returned guilty verdicts against five of the eleven codefendants in this case –Julio SANTIAGO, Juan NUNEZ, Carlos COLON (a/k/a Pedro MIRANDA), Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment. The jury also found Julio Santiago guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight). The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin. With the exception of Enrique AGOSTO, who was severed from his co-defendants for the purpose of trial, the remaining six codefendants have pleaded guilty.

sentencing approach espoused by the First Circuit. United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g., United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35.

## ANALYSIS

According to the Presentence Report (PSR), Rodriguez is a Career Offender and therefore a Criminal History Category VI. (PSR ¶¶ 141-142, 159-160, 212). Because he is responsible for between 100 and 400 grams of heroin and therefore faces a statutory maximum of life, his GSR as a Career Criminal is 360 months to life. U.S.S.G. § 4B1.1(b)(A); (PSR ¶ 142). He faces a statutory mandatory minimum of 10 years' imprisonment. (PSR ¶ 211). The government recommends a period of 360 months' incarceration to be followed by a term of 5 years' supervised release. The government makes no recommendation regarding a fine, but leaves that to the Court's discretion depending on the defendant's ability to repay.

    A.    **The Weight Attributable to the Defendant**

Here, the record – in the form of evidence introduced at trial and the reliable information set forth in the PSR – clearly supports the finding by a preponderance of the evidence that Rodriguez was responsible for 100 and 400 grams heroin (PSR ¶ 132). See United States v. Panet-Collazo, 960 F.2d 256 (1st Cir. 1992) ("We review a trial court's findings of fact under the

Sentencing Guidelines only for clear error"). Two conversations with Santiago alone put Rodriguez above 100 grams of heroin. See PSR ¶ 74 ("they are at about sixty") and ¶ 81 ("some of that . . . to see if you could at least, uh . . . five zero"). Seizures from Rodriguez and his Lowell residence increase this amount an additional 60 grams of heroin. (PSR ¶¶ 123, 46-49, 123). And a pager entry, coupled with conversations between Santiago, Rodriguez, and Enrique Agosto, tack on an additional 100 grams of heroin to the amount which is attributable to Rodriguez. In short, Rodriguez is firmly situated in the 100 to 400 gram range based upon the credible evidence of record.

### B. The The Defendant's Criminal History

The defendant's sentencing range is driven by his extensive criminal history. Rodriguez has accumulated a lengthy record of criminal convictions over the past 27 years. He has been convicted in various state courts of breaking and entering with intent to commit a felony; possession with intent to distribute heroin (more than once); armed assault with intent to rob; assault and battery by means of a dangerous; knowingly being present where heroin is kept; possession of marijuana; and a number of motor vehicle offenses. He has served significant periods of time in both the state prison and the house of correction. The overarching sentencing consideration here, the government suggests, is the defendant's incorrigible criminal conduct spanning nearly three decades and the need to protect the public from him. 18 U.S.C. § 3553(a)(2)(C).

### C. The Career Offender Provision of the Guidelines

The defendant will presumably argue that the Court should not sentence him as a "career offender" in light of the determination in Booker that the United States Sentencing Guideline's

are only advisory. The career offender provision of the Guidelines, however, is unique and should be accorded particularly heavy weight by sentencing courts. The Sentencing Commission promulgated the career offender provision pursuant to a clear and specific Congressional policy declaration which was embodied in statute. In 28 U.S.C. § 994, entitled "Duties of the Commission", Congress directed the Commission to create a guidelines provision that would ensure that a certain, defined category of repeat offenders (so called "career offenders") would be sentenced to a term of imprisonment at or near the maximum term authorized.

>Section 994 directed the Commission as follows:

>(h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and–

>>(1) has been convicted of a felony that is--

>>>(A) a crime of violence; or

>>>(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.); and

>>(2) has previously been convicted of two or more prior felonies, each of which is---

>>>(A) a crime of violence; or

>>>(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.).

28 U.S.C. § 994(h).

In light of this Congressional directive, the Sentencing Commission promulgated the career offender provision of the guidelines –- U.S.S.G. §4B1.1, which essentially mirrors 28 U.S.C. § 994(h). There can be little doubt that the defendant is precisely the type of offender that Congress and the Commission had in mind when promulgating the career offender provisions of § 994(h) and § 4B1.1. Accordingly, this Court should accord particularly heavy weight to the guideline sentencing range in this case because it is based so clearly on both the Congressional and Commission view that career offenders should be sentenced to a term of imprisonment at or near the maximum allowable. See United States v. Carabello, 447 F.3d 26, 27-28 (1st Cir. 2006) (per curiam) (that application of criminal offender guideline yields harsher sentence than guidelines would otherwise advise based on drug quantity alone is the result of "policy choices made by Congress and implemented by the Sentencing Commission.").

**D.     Importance of the Guideline Range.**

Even though the guidelines are advisory, the First Circuit has ruled that the guidelines remain a central component of any sentencing post-Booker. Jiménez-Beltre, 440 F.3d at 518; see also United States v. Kandirakis, No. 04-10372-WGY, 2006 WL 2147610, at *10 (1st Cir. August 1, 2006) (stating "the Guidelines - and their judge-made factual findings - are still the driving force behind federal sentencing"). The First Circuit explained that the "guidelines remained 'an important consideration' because they represented the only 'integration of the multiple factors' identified in the statute, often reflected past practice, and bore the imprimatur of the [Sentencing Commission] expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006), quoting Jiménez-Beltre, 440 F.3d at 518. The continuing importance of the guidelines is such that the more the judge's sentence differs from the advisory

5

guideline range - either higher or lower - the more compelling the judge's justification must be for the atypical sentence. See Kandirakis, 2006 WL 2147610, at *11; United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006); Smith, 445 F.3d at 4.

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Instead, reasonableness is judged in relation to the guidelines for three reasons adopted by the First Circuit in United States v. Jiménez-Beltre: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. See 440 F.3d at 518. Congress explicitly created the Sentencing Commission and guidelines to achieve these ends. Id.

The continued adherence to the now advisory guidelines remains evident in appellate courts across the country. While courts have repeatedly reversed as unreasonable sentences outside the applicable guideline ranges,[2] reversals of sentences imposed within the guideline range have been extraordinarily rare. Kandirakis, 2006 WL 2147610, at *43 n.36; see also United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable"); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("[I]t will be rare for a reviewing court

---

[2]See, e.g, Zapete-Garcia, 447 F.3d at 60 (holding that defendant's forty-eight month sentence – eight times the maximum of the advisory sentencing guideline range – was unreasonable as the district court failed to provide a reason for such a mammoth variance and neither defendant's prior deportations or arrest justified the increase); Smith, 445 F.3d at 5-6 (finding that defendant's forty-six month sentence – less than half the minimum advisory guideline range – for six counts of crack distribution and one count conspiring to sell narcotics was unreasonable as the defendant's minor role was taken into account in the guideline calculation and the defendant had previously sold narcotics near schools, violated post-arrest release terms, and had no better than usual rehabilitation prospects).

to say [a within-Guidelines sentence] is 'unreasonable.'").  Indeed, in the post-Booker era, only one within-guidelines sentence has been found blatantly unreasonable.  United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (sentence based on comparison to co-defendant's sentence found unreasonable).  Furthermore, just two additional sentences have been reversed where the appellate court determined that the district court judge failed to provide an adequate explanation of the within-guidelines sentence.  United States v. Carty, 453 F.3d 1214 (9th Cir. 2006); United States v. Vonner, 452 F.3d 560 (6th Cir. 2006).  Moreover, the First Circuit and its sister circuits have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.

Nowhere is it more important to adhere to the GSR and the policies and considerations promulgated by the Sentencing Commission, the government suggests, than in formulating a sentence for a career offender.  See United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006)  (discussing Congressional goal of promoting national uniformity in sentencing and avoiding unwarranted sentencing disparities).  Objectively viewed from any angle, Rodriguez is a career criminal who is responsible for between 100 and 400 grams of heroin.  Nothing in the record – particularly his drug addiction which makes him *more likely* to continue his criminal behavior after his release – justifies downwardly departing from the guidelines.

     E.    **Application of the § 3553(a) Factors.**

To reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and most importantly, to protect the public, nothing should steer Rodriguez outside the federal sentencing guideline range.  See United States v.

Caraballo, 447 F.3d 26, 27 (1st Cir. 2006) (discussing need to protect public from career offender with lengthy violent record).

The defendant will undoubtedly argue that his medical conditions (HIV and Hepatitis C), apparently as a result of his drug use, essentially trumps all the other factors set forth in § 3553(a) and entitles him to a sentence below the guideline range. However, "'[t]he requirement that the sentencing judge consider a . . . factor that may cut in a defendants' favor does not bestow on a defendant an entitlement to receive any particular "credit" under that factor.'" United States v. Sagendorf, 445 F.3d 515, 518 n.2 (1st Cir. 2006) (citation omitted). Indeed, it is the defendant's addiction that makes it *more likely* that he will continue his criminal behavior once released.

The defendant's drug use and its accompanying effects on his health sadly are not uncommon traits among individuals charged in federal (or state) criminal courts. Although evidence of an individual's past drug abuse arguably may be a proper consideration for the Court in post-Booker sentencing, it does not warrant a deviation under § 3553(a) or departure from the Sentencing Guidelines in this case. See U.S.S.G. §5H1.4 (policy statement) ("[d]rug or alcohol dependence or abuse is not a reason for a downward departure."). The Court, of course, is free to take into account Rodriguez's need for drug and medical treatment by recommending that he be placed in a facility where such treatment can occur.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the

guidelines. The other 3553(a) factors also point to this conclusion. While all § 3353(a) factors must be considered by this Court, "it is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." Dixon, 449 F.3d at 205; see also United States v. Navedo-Concepcion, 450 F.3d 54, 57-58 (1st Cir. 2006) (reasoning that in every decision the main factors contributing to the sentence must be identified by the sentencing court, but there is no "requirement for a lengthy or detailed recitation or one addressing every claim and counter-argument; rather, the reviewing court needs, and both parties deserve, a *specific* explanation and not just a reference to the evidence.").

     In short, the PSR reflects nothing unusual or extraordinary in Rodriguez's background to justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines. C.f., Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline"). While the guideline range here admittedly is ferocious, it would be a mistake to recalibrate them in this case for Rodriguez simply because they seem high. See United States v. Sagendorf, 445 F.3d 515, 517 (1st Cir. 2006) (agreeing with district court's conclusion that imposing a below-guidelines sentence because the GSR "seems high" would be "willfully idiosyncratic" or "a judge-by-judge recalibration of the guidelines," which would be a "serious mistake."). In fairness to other similarly situated defendants who have been sentenced under U.S.S.G. §4B1.1, see United States v. Saez, 444 F.3d 15, 18-19 (1st Cir. 2006) (discussing national uniformity focusing on common standard and looking to how most cases of the same kind were treated in career offender context), Rodriguez should be sentenced to 360 months imprisonment as a career offender.

                                      RESPECTFULLY SUBMITTED
                                      MICHAEL J. SULLIVAN
                                      United States Attorney

By:    */s/ William F. Bloomer*
          WILLIAM BLOOMER
          Assistant U.S. Attorney
          BBO#553104
          william.bloomer@usdoj.gov
          (617) 748-3644

## CERTIFICATE OF SERVICE

I, William F. Bloomer, hereby certify that this document filed through the ECF system on March 16, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/William F. Bloomer*
                                        WILLIAM F. BLOOMER

Date: 16 March 2007